# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

TALISA T. CRAWFORD,

    Plaintiff,

    v.

Civil Action 2:18-cv-480
Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Talisa T. Crawford ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 14), Plaintiff's Reply (ECF No. 17), and the administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I. BACKGROUND

Plaintiff protectively filed her application for supplemental security income on October 14, 2014. (R. at 405-410.) Plaintiff's application was denied initially and upon reconsideration. (R. at 312-325; 351-355.) Plaintiff sought a *de novo* hearing before an administrative law judge. Administrative Law Judge Jeannine Lesperance (the "ALJ") held a hearing on April 12, 2017, at

which Plaintiff, represented by counsel, appeared and testified. (R. at 67-10.) On June 15, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 47-60.) On March 17, 2018, the Appeals Council denied Plaintiff's request for review and affirmed the ALJ's decision. (R. at 1-7.) Plaintiff timely filed this action for review. (ECF No. 1.)

Plaintiff advances two errors in her Statement of Errors. Specifically, Plaintiff asserts that remand is required because the ALJ erred in determining Plaintiff fails to (1) meet or (2) medically equal Listing 1.04(A). The undersigned limits her discussion to evidence bearing on these contentions of error.

## II. RELEVANT RECORD EVIDENCE

### A. Relevant Medical Evidence

The undersigned limits her discussion to medical evidence that bears on the two disputed areas, namely, motor loss accompanied by sensory or reflex loss and results of straight-leg raising tests. On January 23, 2017, Plaintiff visited Ronald Lakatos, MD, who observed that when performing toe walking, Plaintiff was "weaker [on left] than right"; however, Dr. Lakatos also noted normal strength on exam. (R. at 1739.) Dr. Lakatos also reported a positive straight-leg raising test, though the report fails to indicate whether the straight-leg raising test was performed in the upright and supine positions. (*Id.*) Plaintiff was also reported to have positive straight-leg raising tests on February 7, 2017, and March 6, 2017; however, these reports are also silent as to whether the test was performed in the upright and supine positions. (R. at 1897, 1885.) On February 14, 2017, Dr. Francis Paul Degenova reported that although the "[s]traight leg raise testing is positive," "[s]ingle seated leg raise testing is negative with good strength

bilaterally." (R. at 185.) Plaintiff was noted to have normal sensation on October 21, 2014; February 9, 2015; and November 30, 2015. (R. at 1016-1017, 1200-1201, 1732.) On March 9, 2017, Plaintiff underwent an EMG nerve conduction study, which revealed atrophy of the "left EDB muscle," a muscle in the upper surface of the foot, secondary to "left ankle surgery with shoe inserts." (R. at 1990.) The EMG also revealed normal sensation. (R. at 1991.)

**B.      Relevant Hearing Testimony**

Dr. Ronald Kendrick, an orthopedic specialist, testified at the administrative hearing on April 12, 2017, as an independent medical expert. (R. at 88-95.) Dr. Kendrick testified that Plaintiff does not meet or equal any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, including impairments covered in Section 1.04(A) (disorders of the spine) ("Listing 1.04" or the "Listing"). In particular, Dr. Kendrick stated that Listing 1.04 requires "motor and sensory loss," which Plaintiff did not exhibit. (R. at 90, 93.) In addition, Dr. Kendrick testified that "straight leg raising is not well documented." (R. at 92.)

**C.      The ALJ's Decision**

On June 15, 2017, the ALJ issued her decision. (R. at 47-60.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in substantial gainful

---

1. Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, see *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

   1. Is the claimant engaged in substantial gainful activity?

   2. Does the claimant suffer from one or more severe impairments?

   3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of

activity since September 12, 2014. (R. at 49.) The ALJ found that Plaintiff has the severe impairments of obesity; leg length discrepancy; degenerative disc disease of the cervical and lumbar spine; status-post lumbar microdiscectomy; chronic obstructive pulmonary disease ("COPD"); mild carpal tunnel syndrome of the right upper extremity ("CTS"); history of Chiari malformation with placement of a small plate; post-traumatic stress disorder ("PTSD"); borderline intellectual functioning ("BIF"); and bipolar disorder. (*Id.*) She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1, including Listing 1.04(A). (R. at 50.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that the claimant can never climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs; and occasionally stoop, kneel, crouch, and crawl but frequently balance. The claimant can frequently handle and finger with the right upper extremity; frequently reach with the upper extremities; occasionally reach overhead with the upper extremities; occasionally push and pull with the upper extremities; and frequently operate foot controls with the lower extremities. The claimant can have frequent exposure to atmospheric conditions and pulmonary irritants; and no exposure to extreme temperatures. The claimant must avoid hazards, including dangerous machinery and unprotected heights. The claimant retains the capacity to understand, remember, and carryout

---

       Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); see also *Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

simple tasks and instructions; and sustain concentration, attention, and persistence for simple tasks. The claimant can occasionally interact with supervisors and coworkers but no interaction with the general public. The claimant can respond appropriately to occasional workplace changes; and cannot have any high production standards, but can perform goal-oriented work.

(R. at 52.) Relying on testimony from a vocational expert, the ALJ found that Plaintiff could not perform any past relevant work, but that she could perform jobs that exist in significant numbers in the economy. (R. at 58.) The ALJ therefore concluded that Plaintiff was not disabled under Section 1614(a)(3)(A) of the Social Security Act. (R. at 59.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

5

substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

Plaintiff maintains that the ALJ erred in considering whether Plaintiff's impairments (1) met or (2) equaled Listing 1.04(A) (disorders of the spine). To satisfy this listing, Plaintiff must have an impairment as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness [*sic*]) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Additionally, the evidence must show that Plaintiff's impairment "has lasted or can be expected to last for a continuous period of 12 months." 20 C.F.R. § 404.1525(c)(4). Plaintiff has the burden of proving that she meets or equals all of the criteria of a listed impairment. *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391 (6th Cir. 1999) (clarifying that the burden

6

of proving disability remains with the Social Security claimant at Steps 1 through 4 and does not shift to the ALJ until Step 5). Thus, Plaintiff has the burden of establishing all of the following criteria:

(1) A disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture),

(2) resulting compromise of a nerve root (including the cauda equina) or the spinal cord,

(3) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain,

(4) limitation of motion of the spine,

(5) motor loss (atrophy with associated muscle weakness or muscle weakness [*sic*]) accompanied by sensory or reflex loss,

(6) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine), and

(7) the impairment has lasted or can be expected to last for a continuous period of at least 12 months.

In determining whether a claimant satisfies the requirements of a Listing, the ALJ must "actually evaluate the evidence, compare it to Section [1.04] of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411, 415–16 (6th Cir. 2011).

Plaintiff contends the ALJ erred in concluding that she does not have an impairment that meets or equals Listing 1.04. In concluding that Plaintiff does not meet or equal the Listing, the ALJ adopted the opinion of Dr. Kendrick, finding it to be consistent with the record as a whole. (R. at 50.) The ALJ's discussion of Listing 1.04 is as follows:

> The claimant does not have an impairment or combination of impairments that meets or meets or medically equals the severity of one of the listed impairments in

> 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.926). Despite the claimant's diagnosed impairments, the medical evidence does not document listing level severity and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, either individually or in combination. In making this finding, the undersigned considered Listing . . . 1.04 (disorders of the spine) . . . . At the hearing, Dr. Kendrick found that the claimant did not meet or equal any listing. The undersigned adopts the opinion of Dr. Kendrick, as it is consistent with the record. . . . As for Listing 1.04, Dr. Kendrick opined that the claimant did not have the appropriate motor or sensory loss (Hearing Testimony).

(R. at 50.)

The undersigned finds no error in the ALJ's conclusion that Plaintiff fails to (1) meet or (2) equal Listing 1.04, for the reasons set forth below.

**A.  Plaintiff Has Not Established She Meets 1.04**

Plaintiff has failed to establish that she meets Listing 1.04. Plaintiff does not dispute that the record upon which Dr. Kendrick based his testimony failed to establish an essential criterion of Listing 1.04, namely that Plaintiff experienced motor loss accompanied by sensory or reflex loss. (SOE 8, ECF No. 9.) Plaintiff maintains, however, that two medical reports submitted to the ALJ after Dr. Kendrick testified establish this criterion. Because Dr. Kendrick did not consider these two medical reports, Plaintiff asserts that his opinion cannot constitute substantial evidence from which the ALJ could conclude Plaintiff fails to meet the Listing. The undersigned disagrees.

As an initial matter, even if Dr. Kendrick was unable to review the two at-issue medical reports prior to testifying, it is clear that the ALJ considered the reports and determined they do not alter Dr. Kendrick's conclusions. The reports Plaintiff points to include a January 23, 2017 treatment note from Dr. Lakatos and a March 9, 2017 EMG report. (*Id.* citing R. at 1737-1741, 1990-1993.) The ALJ discussed both reports in detail (R. at 55, 56), but nevertheless concluded

that Dr. Kendrick's opinion that Plaintiff fails to meet the Listing was "consistent with the record." (R. at 50, 57.)

The undersigned finds no error in the ALJ's conclusion. First, the reports Plaintiff points to fail to establish motor loss related to Plaintiff's spinal condition, as required by the Listing. During his January 23, 2017 examination, Dr. Lakatos observed that when performing toe walking, Plaintiff was "weaker [on left] than right," though he observed normal strength on exam. (R. at 1739.) However, "'motor loss' required by Listing 1.04(A) is not the same as mere muscle weakness." *Brauninger v. Comm'r of Soc. Sec.*, No. 1:16-cv-926, 2017 WL 5020137, at *20 (S.D. Ohio Nov. 3, 2017). Rather, to demonstrate motor loss as required by Listing 1.04, a claimant must demonstrate atrophy associated with muscle weakness, which Plaintiff has failed to do here. *Miller v. Comm'r of Soc. Sec.*, 848 F. Supp. 2d 694, 709 (S.D. Ohio 2011) ("[W]hile plaintiff points to evidence in the record showing that she had 'muscle weakness,' she points to no evidence showing 'motor loss,' demonstrated by atrophy associated with muscle weakness, which his required by the Listing."). To be sure, the March 9, 2017, EMG revealed atrophy of the "left EDB muscle" (R. at 1990), a muscle in the upper surface of the foot, yet there is no indication in that report or elsewhere in the record that Plaintiff's weakness demonstrated on toe walking has anything to do with the EDB muscle in particular, or that it is otherwise associated with atrophy of that muscle. Furthermore, even if the record established a connection between Plaintiff's weakness demonstrated on toe walking and atrophy of her EDB muscle, a single noted instance of weakness and atrophy is insufficient to meet the durational requirement of the Listing. *See Brauninger*, 2017 WL 5020137 at *21 ("[O]ccasional or intermittent findings of decreased reflexes or changes in sensation of the lower extremities are not sufficient to satisfy

9

Listing 1.04(A)."); *Irvin v. Comm'r of Soc. Sec.*, No. 1:12-cv-837, 2013 WL 3353888, at *30 (S.D. Ohio Jul. 3, 2013) (noting that "occasional findings of decreased reflexes or changes in sensations" was insufficient to establish the plaintiff met Listing 1.04(A)). Plaintiff has thus failed to establish that she experiences motor loss as required by Listing 1.04.

In addition to motor loss, Plaintiff has failed to advance evidence of sensory or reflex loss. Plaintiff points to no evidence of reflex loss. The ALJ cited numerous instances in the record where Plaintiff was noted to have normal sensations. (R. at 53, 54, 57.) Indeed, one of the two reports Plaintiff points to, the March 9, 2017 EMG report, notes an absence of sensory loss. (R. at 1991 ("The sensory conduction test was normal.").)

Finally, as the Commissioner points out, Plaintiff failed to adduce evidence of positive straight-leg raising tests in both the sitting and supine positions that meet the Listing's durational requirement. The undersigned rejects Plaintiff's contention that motor loss accompanied by sensory or reflex loss was the sole missing criterion identified by Dr. Kendrick. Rather, Dr. Kendrick also testified that positive "strait leg raising is not well documented." (R. at 92.) Although the record contains evidence of positive straight-leg raising tests in early 2017 (R. at 1739, 1897, 1885), the reports fail to indicate whether the test was performed in both the sitting and supine positions, as required to meet the Listing. *See Miller*, 848 F. Supp. 2d at 709 (rejecting a straight leg test that from which it was not "apparent that the testing was done both in the sitting and in the supine positions, as required"); *Brauninger*, 2017 WL 5020137 at *22 (rejecting straight leg test that "does not indicate whether the test was performed in both the sitting [and] supine positions"). In fact, on February 14, 2017, Dr. Degenova specifically noted that although the "[s]traight leg raise testing is positive," "[s]ingle seated leg raise testing is

10

negative with good strength bilaterally." (R. at 185.) Under these circumstances, Plaintiff has failed to satisfy her burden of demonstrating that she meets all the criteria for Listing 1.04. As such, the undersigned **RECOMMENDS** that Plaintiff's first contention of error be **OVERRULED**.

**B.      Plaintiff Has Not Established She Equals Listing 1.04**

Plaintiff next contends that the ALJ erred in determining that she does not equal Listing 1.04(A). Specifically, Plaintiff maintains that the ALJ was required to consider whether Plaintiff's mental impairments medically equal the criteria of Listing 1.04 that Plaintiff failed to establish. (SOE at 11, ECF No. 9 ("The mental health evidence of record . . . should be found to at least be equal in medical significance to that of motor loss or sensory loss [required by Listing 1.04].").) Relatedly, Plaintiff contends that because Dr. Kendrick failed to consider whether Plaintiff's mental impairments medically equal the missing criteria of Listing 1.04, his opinion cannot constitute substantial evidence to support the ALJ's conclusion that Plaintiff fails to meet the Listing. The undersigned disagrees.

If a claimant has an impairment identified in a listing but does "not exhibit one or more of the findings specified in the particular listing," she may medically equal the listing if she has "other findings related to [the] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 404.1526(b)(1); *see also Relph v. Comm'r of Soc. Sec.*, 2015 WL 8767468, *22 (S.D. Ohio Dec. 15, 2015) (same). To establish medical equivalence, the "plaintiff bears the burden of presenting 'medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" *Coe v. Comm'r of Soc. Sec.*, No. 1:15-cv-392, 2016 WL 2733479, at *20 (S.D. Ohio May 10, 2016) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530

11

(1990)) (emphasis in original). *See also* 20 C.F.R. § 404.1526 (medical findings must be at least equal in severity and duration to the listed findings). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, 493 U.S. at 531; *see also* SSR 83-19, at 91-92 ("It is incorrect to consider whether the listing is equaled on the basis of an assessment of *overall* functional impairment. . . . The functional consequences of the impairments . . . irrespective of their nature or extent, *cannot* justify a determination of equivalence.") (emphasis in original).

Here, the undersigned finds Plaintiff's assertion that her mental impairments could medically equal the missing physical criteria of Listing 1.04 unpersuasive. To be sure, Plaintiff does not contend that her mental impairments (as opposed to her spinal condition) cause motor loss accompanied by sensory or reflex loss or positive straight-leg raising tests. *Cf. Koepp v. Astrue*, No. 10-C-1002, 2011 WL 3021466, at *34 (E.D. Wis. July 22, 2011) (where the plaintiff's inflammatory arthritis did not cause restrictions on concentration or activities of daily living as listing 14.09 required, ALJ erred in failing to consider whether the plaintiff nevertheless met the listing due to restrictions on concentration and activities of daily living caused by vision impairments and pain). Rather, Plaintiff asserts that her mental impairments in and of themselves, with no resulting physical limitations, could substitute for the absent physical requirements of Listing 1.04. The undersigned disagrees.

"Meeting the medical equivalence standard does not mean that [the plaintiff] may simply substitute his mental limitations for one or more of the required criteria." *Donarski v. Colvin*, No. 14-cv-4419 (HB), 2016 WL 6139951, at *21-22 (D. Minn. Feb. 2, 2016); *see* 20 C.F.R. §

12

416.929 (d)(3) (stating "we will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed impairment"). Rather, medical equivalence requires "other findings *related to* [the listed] impairment." 20 C.F.R. § 416.926(b)(1)(A) (emphasis added); *see also Walls v. Comm'r of Soc. Sec.*, No. 1:08-cv-254, 2009 WL 1741375, at *8 (S.D. Ohio June 18, 2009) ("To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairments with the medical criteria of the listed impairment.") (citing 20 C.F.R. § 416.926). In the absence of resulting physical limitations, Plaintiff's mental impairments bear no relation to the criteria of Listing 1.04, all of which are physical in nature. Nor can the "overall functional impact" of Plaintiff's mental and physical impairments establish medical equivalence. *Zebley*, 493 U.S. at 531. As such, Plaintiff has failed to satisfy her burden of establishing that she equals Listing 1.04(A). Accordingly, the undersigned **RECOMMENDS** that Plaintiff's second contention of error be **OVERRULED**.

## V. CONCLUSION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VI. PROCEDURE ON OBJECTIONS

If Plaintiff seeks review by the District Judge of this Report and Recommendation, he may, within fourteen (14) days, file and serve on all parties objections to the Report and

Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

Plaintiff is specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED**.

 /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE